UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
EVERARD LIVERPOOL,

       Plaintiff,       17-cv-4272 (PKC)

  -against-            OPINION
                   <u>AND ORDER</u>

NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION FUND,

       Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

    Plaintiff Everard Liverpool, who is proceeding <u>pro se</u>, brings this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). He alleges that defendant New York City District Council of Carpenters Pension Fund (the "Fund") wrongfully denied his application for disability pension benefits.

    The defendant is a multiemployer benefit fund, and Liverpool is a former participant. He alleges that he became permanently disabled in a workplace accident that took place on or near the Williamsburg Bridge in June 1997. In February 2015, he applied to the Fund for disability pension benefits. The Fund denied the application, and explained that because he had not worked as a covered employee for more than six years, Liverpool had lost all Vesting Credits under The New York City District Council of Carpenters Pension Plan (the "Plan").

    The Fund moves to dismiss the Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P. Liverpool's complaint contains few details about his claim, but it attaches 95 pages of exhibits, mainly consisting of correspondence with the Fund from 2015 and 2016. Affording

Liverpool special solicitude given his pro se status, the Court has relied principally on these exhibits to identify the strongest arguments that they suggest.

For the reasons that will be explained, the Court concludes that because Liverpool did not appeal the plan administrator's initial denial of benefits to the Fund's trustees, he did not satisfy ERISA's administrative exhaustion requirement. The Court separately concludes that the Fund's denial of his benefits application was not arbitrary and capricious. The Fund's motion to dismiss is therefore granted.

BACKGROUND.

Liverpool was a covered employee under the Plan from 1987 through 1997. (Docket # 2 at 20.) During that time, he earned a total of 5.25 Vesting Credits, which are determined based on the number of hours an employee works under the Plan in a given year. (Id.) The Plan requires employees to have a minimum number of Vesting Credits to receive pension benefits. (Id. at 20.)

On June 30, 1997, a loose cable struck Liverpool's knee while he was working on or near the Williamsburg Bridge, knocking him into a ditch. (Compl't at 5.) The injury required surgery to his knee and back, and left him permanently disabled. (Compl't at 5-6.)

Liverpool first sought disability pension benefits from the Fund in an application dated February 13, 2015, which the Fund's claims administrator denied in a letter of March 26, 2015. (Docket # 2 at 62, 58.) It stated that Liverpool permanently lost his 5.25 Vesting Credits when a permanent break in service occurred from 1997 through 2002, during which time he earned no Vesting Credits. (Id. at 58.) The letter advised Liverpool that he had the right to appeal the Fund's decision through a written request to its board of trustees within 180 days.

(Cordero Dec. Ex. 5 at 2.) It stated that if the appeals review had an adverse result, section 502 of ERISA provided for the right to bring a civil action to enforce a benefits claim. (Id.)

After the denial of his benefits application, but prior to bringing this action, Liverpool was represented by legal counsel, and the Complaint annexes correspondence that his attorney made to the Fund on his behalf. (Docket # 2 at 8-102.) Liverpool apparently retained the attorney on or about August 25, 2016, and the attorney sent letters to the Fund seeking Plan documentation and requesting that the Fund grant Liverpool's benefits application. (See, e.g., id. at 87-88.) This correspondence was not addressed to the Fund's trustees, and was made to the claims administrator and an employee with the job title of "Pension Analyst."

In a letter to Liverpool dated May 24, 2017, Liverpool's attorney explained that after a conversation with a Department of Labor official and review of the ERISA statutes, he had concluded that the Fund had the discretion to deny Liverpool's benefits application under ERISA and the Plan. (Id. at 8-9.)

Liverpool commenced this action on June 6, 2017, and is proceeding in forma pauperis. (Docket # 2, 4.) The Fund's motion to dismiss was accompanied with the notice to pro se litigants required by Local Civil Rule 12.1. (Docket # 18.)

RULE 12(b)(6) STANDARD.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Legal conclusions are not entitled to the presumption of truth, and a court assessing the sufficiency of a complaint disregards them. Iqbal, 556 U.S. at 678. Instead, the Court must examine only the well-pleaded factual allegations, if any, "and then determine

whether they plausibly give rise to an entitlement to relief." Id. at 679. The Complaint must include non-conclusory factual allegations that "'nudge[ ]'" its claims "'across the line from conceivable to plausible." Id. at 680 (quoting Twombly, 550 U.S. at 570).

In deciding this motion to dismiss, the Court relies on the exhibits annexed to the Complaint, as well as the text of the Plan as submitted by the Fund. "For the purpose of a motion to dismiss under Rule 12(b)(6), the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Allco Fin. Ltd. v. Klee, 861 F.3d 82, 98 n.13 (2d Cir. 2017) (quotation marks omitted). "A document is integral to a complaint if the complaint relies heavily upon its terms and effect." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016). "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208-09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

In reviewing the Complaint, the Court affords Liverpool "special solicitude" and "interpret[s] the complaint to raise the strongest claims that it suggests." Williams v. Correction Officer Priatno, 829 F.3d 118, 122 (2d Cir. 2016). "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotations omitted).

DISCUSSION.

    A. Because Liverpool Did Not Administratively Exhaust His Benefits Application, the Fund's Motion Is Granted.

Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), permits a plan participant or beneficiary to bring a civil action to recover benefits due under a plan, or to

enforce rights established by a plan's terms. A plaintiff must administratively exhaust all claims before bringing an ERISA action. Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 511 (2d Cir. 2002); accord Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ., 819 F.3d 42, 55 (2d Cir. 2016) ("this Circuit and others ha[ve] recognized the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases.") (quotation marks omitted).

Exhaustion is not a jurisdictional requirement. Paese v. Hartford Life & Accident Ins. Co., 449 F.3d 435, 439, 446 (2d Cir. 2006). It is a judicially created "safeguard" that encourages plans to take "voluntary step[s]" to provide medical and retirement benefits without resorting to litigation. Halo, 819 F.3d at 55. It also reserves for ERISA trustees the initial and primary authority to determine benefits distribution, instead of delegating that task to the courts. See generally Davenport v. Harry N. Abrams, Inc., 249 F.3d 130, 134 (2d Cir. 2001). Courts will not require plaintiffs to exhaust administrative remedies if "they make a clear and positive showing that pursuing available administrative remedies would be futile." Kirkendall v. Halliburton, Inc., 707 F.3d 173, 179 (2d Cir. 2013). The fact that the plaintiff is proceeding pro se does not relieve him of the exhaustion requirement. See, e.g., Leak v. CIGNA Healthcare, 423 Fed. App'x 53, 53-54 (2d Cir. 2011) (affirming dismissal of pro se ERISA plaintiff's claims on non-exhaustion grounds).

Although failure to administratively exhaust is an affirmative defense, a court can decide the issue in a Rule 12(b)(6) motion if non-exhaustion is clear from the face of the complaint. Leak, 423 Fed. at 53-54. Liverpool's complaint does not expressly assert that he administratively exhausted his benefits claim or that exhaustion would have been futile. Affording Liverpool special solicitude as a pro se litigant, the Court has reviewed his Complaint

and its exhibits in an attempt to identify allegations that go toward administrative exhaustion or support a claim of futility.

As chronicled in the Complaint's exhibits, Liverpool applied for disability pension benefits in an application of February 13, 2015, which the Fund denied in a letter of March 26, 2015. (Docket # 2 at 62, 58.) The Complaint annexes only the first page of the Fund's denial letter. (Id. at 58.) The Fund has submitted its full text, which, on the second page, advises: "You have the right to appeal this decision by written request to the Board of Trustees at the above address within (**60 Reg/180 Disab**) days after receipt of this notice." (Cordero Dec. Ex. 5 at 2; emphasis in original.) The Fund advised Liverpool that he could submit any "issues or comments in writing," as well as additional evidence. (Id.) It informed Liverpool that he was entitled, free of charge, to copies of all documents and records relevant to his claim. (Id.) The letter stated: "A committee of Trustees appointed by the Board for the purpose of carrying out a full and fair review of your claim will decide the issues on the basis of the facts and the specific rules of the Pension Plan." (Id.; emphasis in original.) The letter concluded by advising Liverpool that if the trustees' review was adverse to his claim, he had the right to bring a civil action under section 502(a) of ERISA. (Id.)

Liverpool's declaration in opposition characterizes his attorney's letter of September 20, 2016 as an administrative appeal, and observes that the Fund's response letter did not mention a further appeals process. (Liverpool Dec. ¶¶ 10-11.) But the letter of September 2016 is dated approximately 18 months after the Fund denied Liverpool's application, which is well beyond the stated 180-day deadline. (Docket # 2 at 21-22.) The Complaint and its exhibits do not suggest that equitable tolling could be warranted. See, e.g., Chapman, 268 F.3d at 512. Further, the letter is addressed to the Fund administrator, and not the Board of Trustees, which

the denial letter advised was required for an administrative appeal. (Cordero Dec. Ex. 5 at 2.) The Complaint separately annexes correspondence from September and October 2016 between Liverpool's attorney and a Fund employee with the title of "Pension Analyst." (Docket # 2 at 13-16, 18, 28-30, 50, 53-54, 93-96.)

This correspondence does not satisfy the exhaustion requirement. It was untimely and was not addressed to the Trustees of the Fund. The Second Circuit has stated that invoking exhaustion outside of "the formal claims procedure would frustrate the primary purpose of the exhaustion requirement." Davenport, 249 F.3d at 133-34 (quotation marks omitted). Affording Liverpool special solicitude as a pro se litigant, the attorney letters of 2016 do not support an allegation or theory that Liverpool administratively appealed his denial of benefits.

Liverpool also argues that any administrative appeal would have been futile based on the Fund's responses to his lawyer's inquiries and its arguments in this action. (Opp. Mem. at 5.) But the continued denial of benefits is an insufficient basis to invoke futility. The Second Circuit has observed that an employee benefit fund's "actions taken to defend lack of entitlement to benefits cannot establish futility because otherwise the exhaustion requirement would be entirely undermined," permitting plaintiffs to "'bypass administrative remedies, file suit, and then hope for subsequent events to justify futility claims.'" Davenport, 249 F.3d at 134 (quoting Commc'ns Workers of Am. v. AT&T, 40 F.3d 426, 433 n.1 (D.C. Cir. 1994)).

Based on the Complaint and its annexed exhibits, Liverpool has not plausibly alleged that he administratively exhausted his benefits claim. Drawing every reasonable inference in his favor as a pro se litigant, he also has not plausibly alleged that exhaustion would have been futile. Because the failure to administratively exhaust is clear from the face of the Complaint, the Fund's motion to dismiss is granted.

B.  The Complaint Is Separately Dismissed Because It Does Not Plausibly Allege that the Denial of Benefits Was Arbitrary and Capricious.

When a benefits plan gives the administrator discretionary authority to decide benefits eligibility, courts may not disturb its decision unless it was arbitrary and capricious. Ocampo v. Bldg. Serv. 32B-J Pension Fund, 787 F.3d 683, 690 (2d Cir. 2015). "Under the arbitrary-and-capricious standard of review, we may overturn the plan administrator's denial of benefits 'only if it is found to be without reason, unsupported by substantial evidence or erroneous as a matter of law.'" Id. (quoting Miles v. Principal Life Insurance Co., 720 F.3d 472, 486 (2d Cir. 2013)).

The Plan provides that its trustees properly exercise their delegated authority unless they act arbitrarily and capriciously.  (Art. 8.6(c).)  The trustees may designate their authority in writing to other persons, including the designation of a claims administrator to make initial determinations of a benefits claim.  (Art. 8.6(a), 8.6(d)(3).)  The Court therefore reviews the Fund's denial of benefits under the arbitrary and capricious standard.

The claims administrator denied Liverpool's application because it determined that he incurred a "Permanent Break in Service" under the Plan, which caused him to lose all Vesting Credits.  (Cordero Dec. Ex. 5. at 2.)  The denial letter explained that under Article 3.3 of the Plan, a participant is deemed to have had a "Permanent Break in Service" if he has earned five or fewer Vesting Credits and has five consecutive "One Year Breaks in Service," or, alternatively, if he has earned six or more Vesting Credits and has consecutive "One Year Breaks in Service" that equal or exceed the number of his Vesting Credits.  (Cordero Dec. Ex. 5 at 1.) Liverpool's 5.25 Vesting Credits did not fall within either category, and as Liverpool notes, the Fund apparently evaluated his benefits claim as if he had six Vesting Credits.  (Opp. Mem. at 7.)

A "One Year Break in Service" occurs when a participant fails to earn at least 1/4 Vesting Credits in a calendar year. (Cordero Dec. Ex. 5 at 1.) The letter explained that Article 4.1 of the Plan sets forth four separate, alternative circumstances that a participant may satisfy in order to receive pension benefits. (Cordero Dec. Ex. 5 at 2.) Three require ten or more Vesting Credits, and the fourth applies if the participant has reached age 65, retires, has been a participant in the Plan for at least five years and has not incurred a Permanent Break in Service.[1] (Id.) The letter explained that Liverpool had a Permanent Break in Service when he earned no Vesting Credits during the six-year period of January 1, 1997 through December 31, 2002. (Cordero Dec. Ex. 5 at 1.) As a result, he lost all Vesting Credits, and was ineligible for pension benefits. (Id.)[2]

Although it did not expressly rely on the timeliness of Liverpool's benefits application in its initial denial, the Fund notes in support of its motion that to be entitled to a disability pension, an applicant must apply within 36 months of the date of disability. (Plan Art. 4.2(a)(5); Def. Mem. at 16.) Liverpool applied for benefits approximately 17-1/2 years after his injury, rendering his application untimely under the Plan.

The Court concludes that the Fund's denial of benefits was not arbitrary and capricious under the Plan. Liverpool's 5.25 Vesting Credits fell below the 10-credit threshold for the receipt of benefits, and the Fund reasonably concluded that his break in service resulted in

---

[1] The Court separately notes that Liverpool's benefits application listed his date of birth as September 6, 1949. (Docket # 2 at 61.) At the time of his June 1997 injury, he would have been age 48. If he stopped working in 1997 due to the injury, and that is construed as retirement under the Plan, he still would fall below the age-65 threshold for benefits eligibility.

[2] After Liverpool stopped working as a covered employee, the Fund amended the Plan, effective January 1, 1999, to provide disability pension benefits to covered employees who had five or more Vesting Credits and who performed one or more hour of covered work in 1999 or later. (Def. Mem. at 6.) Liverpool has alleged that he stopped working in 1997, and there is no plausible basis to conclude that he is covered by the subsequent amendment of 1999. In any event, the amendment also requires that any claim for a disability pension must be brought within 36 months of the disability's commencement, which would still render his application untimely. (Def. Mem. at 6; Cordero Dec. Ex. 1 at 12.)

the loss of all credits. To the extent that Liverpool argues that his break in service was involuntary due to his injuries, this does not render the Fund's benefits denial arbitrary and capricious, because he still would not have qualified for benefits even with the 5.25 Vesting Credits. See, e.g., Saladino v. ILGWU Nat'l Ret. Fund, 754 F.3d 473, 477 n.4 (2d Cir. 1985) (denial of benefits was not arbitrary and capricious when plaintiff did not qualify for benefits prior to involuntary layoff). The Fund's denial of benefits also was reasonable because Liverpool brought his application approximately 14-1/2 years after the Plan's deadline for doing so. Based on the Complaint's allegations, the annexed exhibits and documents integral to the Complaint, Liverpool has not plausibly alleged that the denial of benefits was "without reason, unsupported by substantial evidence or erroneous as a matter of law," as required to state a claim directed to his benefits denial. Ocampo, 787 F.3d at 690.

Because Liverpool has not plausibly alleged that the denial of benefits was arbitrary and capricious, the Fund's motion to dismiss is granted.

CONCLUSION.

The defendant's motion to dismiss is GRANTED. (Docket # 17.) The Clerk is directed to terminate the motion, close the case and enter Judgment for the defendant.

The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal would not be taken in good faith and in forma pauperis status is therefore denied for appeal. Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
June 4, 2018